The Honorable Gene Roebuck State Senator 2414 E. Matthews Jonesboro, Arkansas 72401
Dear Senator Roebuck:
This official Attorney General opinion is rendered in response to a set of questions you have presented concerning local police pension systems.
Some of your questions relate to a situation in which three retired members of a local police pension board have not stood for election in more than two years. The minutes of the meetings of the board indicate that in May, 1988, the board voted to allow the mayor to appoint the retired members of the board. The minutes also reflect the fact that in October, 1991, the board changed its position on this issue and voted to allow the retired members of the system to elect the retired members of the board. The board currently has one retired board member who was elected last June, and three retired members who have held their positions without election for more than two years.
You have presented the following questions:
 (1) If the three members have not stood for election in more than two years, are they legally holding their positions?
 (2) Can their positions be declared vacant and a special election held to rectify the situation?
 (3) Can those three members vote on the question of whether to have a special election?
 (4) Can the members of the pension system force the board to hold a special election?
 (5) What criteria does a retiring member have to meet when requesting approval to be placed on the DROP program? (That is, can the board deny an applicant for DROP just because the board members or the chief of police does not want that individual to continue working even though the applicant possesses all the qualifications to be placed on DROP?)
 (6) Does the board have to notify members of the system that meetings are to be held?
 (7) Does the board have to inform members of what the meeting's proposed agenda is going to be?
 (8) How long prior to a meeting would the members have to be notified, if notification is required?
 (9) Are members entitled to receive ballots in a timely manner and be able to cast a vote in the elections? (Several members of a particular board received ballots after the required date to be returned and therefore could not vote on any of the candidates.)
(10) Can a board member be ousted by a recall election?
 (11) If a member of the board violates any of the statutes pertaining to the retirement system, can that member be sued in civil court or prosecuted in criminal court?
RESPONSE
Question 1 — If the three members have not stood for election in morethan two years, are they legally holding their positions?
It is my opinion, as explained more fully below, that even though the three members in question have not stood for election in more than two years as required by law and the board's rules, they are nevertheless authorized by state law [Ark. Const., art. 19, § 5 and A.C.A. §24-11-405(b)] to continue to hold their board positions until their successors are elected and qualified. In this sense, therefore, they are "legally" holding their board positions.
Under the provisions of A.C.A. § 24-11-405, the retired members of the board are to be chosen yearly in the manner determined by the board. It is my understanding that under the board rules that have been in effect since 1991, the retired members are to be chosen by election. Although elections pursuant to these provisions were not held for two years, the three members in question can continue to hold office. This continuation in office is authorized by Article 19, § 5 of the Arkansas Constitution and by A.C.A. § 24-11-405(b). Those provisions state, respectively:
Article 19, § 5. Officers — Holding over.
 All officers shall continue in office after the expiration of their official terms until their successors are elected and qualified.
Ark. Const., art. 19, § 5.
A.C.A. § 24-11-405. Board of trustees.
 (b) The police officer members and the physician representative of the board [of trustees of the policemen's pension and relief fund] shall serve for a period of two (2) years or until their successors are elected and qualified.
A.C.A. § 24-1-405(b).
The authorization to continue in office, provided by the above-quoted laws, indicates that the three members in question are, in a sense, "legally" holding their board positions. This conclusion is bolstered by the fact that the Arkansas Supreme Court has held that "[w]here a legal incumbent of an office is authorized by law to hold over after expiration of the term until his successor is elected and qualified, the period of his holding over is as much a part of the term as the regular period fixed by law." Faulkner v. Woodard, 203 Ark. 254, 257, 156 S.W.2d 243
(1941), citing Wood v. Miller, 154 Ark. 318, 242 S.W. 573 (1922).
Your question appears to indicate that these members were initially elected to the board as provided by law and by the governing rules of the board. Under those circumstances, they are validly holding over. During the holdover period, the actions of these members are valid.
Question 2 — Can their positions be declared vacant and a specialelection held to rectify the situation?
It is my opinion that because the three board members in question are holding over in their board positions pursuant to law, their board positions are not deemed to be vacant.
Under the provisions of Article 19, § 5 of the Arkansas Constitution, and the case law decisions interpreting that provision, a failure to elect properly does not create a vacancy. See, e.g., Justice v. Campbell,241 Ark. 802, 410 S.W.2d 601 (1967) (failure of person elected to office to qualify does not render office vacant); Hill v. Goodwin, 82 Ark. 341,101 S.W. 752 (1907) (fact that election is void does not render office vacant).
The Justice v. Campbell court described the term "vacancy" as referring to "offices which on account of death, resignation, removal or abandonment of the previous holder thereof, or for some other cause, have in fact no incumbent." Justice v. Campbell, 241 Ark. 802, 804,410 S.W.2d 601 (1967). The court also stated that:
 As a general rule, there is a vacancy in office whenever there is no incumbent to discharge the duties of the office, that is, whenever the office is empty or unfilled; but as long as there is any one authorized to discharge the duties of the office, the office is not to be deemed vacant so as to authorize the exercise of the power to fill vacancies in office.
241 Ark. at 805-806, citing Rice v. Palmer, 78 Ark. 432, 96 S.W.2d 396
(1906) (Riddick, J. concurring.)
Because the board positions in question do have incumbents who were initially elected properly and are validly holding over, these positions are not vacant.
The question of whether a special election can be held for these positions on the board is one that is not specifically addressed by the provisions of A.C.A. § 24-11-405, which address the requirements concerning the composition of the local police pension and relief fund board, as well as the board's powers and duties. Nevertheless, this statute does give the board the authority to promulgate rules and regulations to govern the manner in which it implements A.C.A. §24-11-405. More specifically, Section (a)(3)(D) states: "The board shall have the power to make all rules and regulations needful for its guidance to implement the provisions regarding board composition." Under this broad grant of rule-making authority, the board could choose to hold a special election for these positions on the board.
It is also my opinion that the board is subject to an action for a writ of mandamus ordering it to hold a special election for these positions. It is a requirement of law that the retired board members be chosen in May of each year in the manner prescribed by the board. See A.C.A. §24-11-405(b). Because the board has prescribed election as the manner of selecting retired board members, the board is therefore required by law to hold such elections in May of each year. Accordingly, a failure of the board to hold such elections can subject it to a mandamus action. See
A.C.A. § 16-115-101 et seq.
I therefore conclude as follows: Under the provisions of Article 19, § 5
of the Arkansas Constitution, and of A.C.A. § 24-11-405(b), the three board members in question will hold their positions until their successors are elected and qualified. Under the board's broad regulatory authority, it can choose to hold a special election for these positions on the board, or it can be forced to do so through the mechanism of a writ of mandamus.
Question 3 — Can those three members vote on the question of whether tohave a special election?
It is my opinion that this question raises a matter that is not addressed by state law and will be governed by the board's rules and regulations. Because state law does not specifically address the issues of special elections and who may vote to have special elections, and because the board has been granted broad authority to make rules and regulations concerning board composition, it appears that these matters have been left to the board to address through its rules and regulations.
Question 4 — Can the members of the pension system force the board tohold a special election?
Yes. See response to Question 2.
Question 5 — What criteria does a retiring member have to meet whenrequesting approval to be placed on the DROP program? (That is, can theboard deny an applicant for DROP just because the board members or thechief of police does not want that individual to continue working eventhough the applicant possesses all the qualifications to be placed onDROP?)
It is my opinion that in order to qualify for the DROP program, an applicant must meet the following criteria:
• Be a member of the policemen's pension and relief fund;
• Have not less than twenty years of credited service; and
• Be eligible to receive a service retirement pension.
A.C.A. § 24-11-434(a)(1). In addition, the board must approve "the participation." I have previously interpreted the phrase "the participation" to refer to the individual applicant's participation. See
Op. Att'y Gen. No. 97-340. I continue to interpret the phrase in this manner; that is, I take the position that approval by the board is a formality that must be fulfilled in order for an applicant to begin participating in a DROP program. It is my opinion, however, that the board must approve applicants who meet the three above-listed criteria.
In Opinion No. 97-340, I also took the position that the board could not, in a blanket fashion, approve or disapprove the participation of the entire police force in its DROP plan. Implicit in the question presented in Opinion No. 97-340 was the fact that the local board had voted to participate in DROP. It was our understanding that the question concerned only the issue of the board's approval of the officers' participation — not the issue of the local fund's participation.
Because the question you have presented gives rise to the issue of the local fund's participation in DROP, I would therefore like to clarify Opinion No. 97-340, as follows: It is my opinion that each local fund'sboard is entitled to decide whether or not the fund will participate inDROP. I base this conclusion on two factors: First, the board is given broad authority to determine the manner in which it will carry out its duties. See A.C.A. § 24-11-405(d)(1). It is also given "absolute control and management of the funds provided for in this subchapter and of all moneys donated, paid, or assessed for the relief or pension of disabled, superannuated, and retired members of the police department, their surviving spouses and minor children, or dependent parents solely dependent upon members for their support." A.C.A. § 24-11-405(c). This grant of control of the fund is substantial and is clearly broad enough to encompass a decision as to whether or not to participate in DROP. Second, the DROP statute makes reference to "participating municipalities," see A.C.A. § 24-11-425(b)(1)(c), thus indicating a legislative understanding and intent that each fund be able to make its own decision concerning whether to participate in DROP. For these reasons, I conclude that the board of each local fund may vote to decide whether the fund will participate in DROP. If a local fund decides to participate, each officer who wishes to participate must apply to board for approval of his or her individual participation. The board must approve all applicants who meet the three criteria quoted previously.
Question 6 — Does the board have to notify members of the system thatmeetings are to be held?
It is my opinion that although the statutes specifically governing the local fund and its board do not require notice of meetings of the board to system members, the board is nevertheless bound by the notification requirements of the Freedom of Information Act (FOIA) (A.C.A. § 25-19-101et seq.).[1]
Entities who are subject to the requirements of the FOIA must give notice of the time and place of their regular meetings to anyone who requests such notice. A.C.A. § 25-19-106(b)(1). In addition, these entities must notify the press of the time and place of emergency or special meetings. A.C.A. § 25-19-106(b)(2).
I must therefore conclude that the board must give notice of the time and place of its regular meetings to all system members who request such notice. The board must also notify the press of its emergency or special meetings.
Question 7 — Does the board have to inform members of what the meeting'sproposed agenda is going to be?
It is my opinion that the board is not required by state law to inform members of the meeting's agenda. No such requirement is stated in either the statutes governing the local fund, or in the FOIA.
Question 8 — How long prior to a meeting would the members have to benotified, if notification is required?
The FOIA does not set forth a time requirement for notice of regular meetings, which is the type of meeting that pensions system members are entitled to request notice of.[2] There is therefore no specific period of time within which the board must notify those who have requested notice. However, the purpose of the FOIA does provide some guidance in this matter. The Arkansas Supreme Court has noted that the purpose of the FOIA is to assure that "public business be performed in an open and public manner." Ark. Gazette Co. v. Pickens, 258 Ark. 69, 74,522 S.W.2d 350 (1975). Clearly, in order to be consistent with the purpose of the FOIA, the board must give notice within a period of time that is reasonably sufficient to allow system members who have requested notice to arrange to attend the meeting.
Question 9 — Are members entitled to receive ballots in a timely mannerand be able to cast a vote in the elections? (Several members of aparticular board received ballots after the required date to be returnedand therefore could not vote on any of the candidates.)
It is my opinion that system members are entitled to receive ballots in time to vote in the elections. The right of system members to vote in board elections is one that is created by law, see A.C.A. § 24-11-405, and therefore cannot be thwarted by a failure to provide ballots in a timely manner.
Question 10 — Can a board member be ousted by a recall election?
It is my opinion that the ouster of a member of the board of trustees of the policemen's pension and relief fund by recall election is not authorized by statute. The proper remedy for replacing such members is through a special election for their positions, which can be ordered through the mechanism of a writ of mandamus. See response to Question 2.
Question 11 — If a member of the board violates any of the statutespertaining to the retirement system, can that member be sued in civilcourt or prosecuted in criminal court?
The answer to this question will turn largely upon the facts of the particular case. A meaningful answer to this question would require knowledge of the particular violation involved, as well as the facts surrounding that violation and the intent of the board member in question. Because I do not have this type of information, I am unable to respond. I will note, however, that board members may be entitled to limited immunity in certain instances under the provisions of A.C.A. §16-120-102 or A.C.A. § 19-10-305. Again, though, the question of whether these statutory grants of limited immunity will be applicable will depend upon the nature of the violation in question.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] The requirements of the Freedom of Information Act apply to any "bureau, commission, or agency of the state, or any political subdivision of the state, including municipalities and counties, boards of education, and all other boards, bureaus, commissions, or organizations in the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds." The boards of pension funds created by state law and supported by tax proceeds, see A.C.A. §24-11-401 et seq., clearly fall within this definition.
[2] Under the FOIA, notice of special meetings must be given to the press at least two hours in advance of the meeting.